UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

Noah John Ruiz,

　　　　　　　Plaintiff

　　　v.

Albert Flores, Dennis Frank, Deborah French, Mark Jenkins, Shane Kensey, Vince Villegas, Rey Morelos, State of California, Department of Corrections and Rehabilitation, and DOES 1-25, inclusive,

　　　　　　　Defendant.

CASE NO. 1:14-cv-00179 AWI SMS

ORDER RE: MOTION TO DISMISS FIRST AMENDED COMPLAINT AND FOR LEAVE TO FILE SECOND AMENDED COMPLAINT
[FRCP 12(b)(6)]

(Docs. 24, 26, 29, 30.)

## I. INTRODUCTION

　　Defendants (1) Mark Jenkins, (2) Shane Kensey and Vince Villegas, (3) California Department of Corrections and Rehabilitation ("CDCR") and Reynaldo Morelos, and (4) Albert Flores and Deborah French (collectively "Defendants"), have filed motions to dismiss Plaintiff Noah Ruiz's ("Plaintiff") complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Noah Ruiz has filed oppositions to each of Defendants' motions to dismiss. For the reasons discussed below, Defendants' motions will be granted in part and denied in part.

## II. FACTUAL BACKGROUND[1]

　　Prior to December 30, 2012, Plaintiff was subject to a period of parole pursuant to California Penal Code Section 3000(b). (First Amended Complaint, Doc. 8 ("FAC") at ¶ 17.) On December 30, 2012, Plaintiff was discharged from parole. (FAC at ¶ 17.) Plaintiff contends that on

---

[1] All factual allegations are taken from the operative complaint.

January 18, 2013, without prior notice, the seven named individual Defendants came to Plaintiff's residence. (FAC at ¶ 18.) Defendants informed Plaintiff that they were there to conduct a parole search. (FAC at ¶ 19.) They placed Plaintiff in handcuffs and asked him if he had anything illegal in his possession. (FAC at ¶ 19.) Plaintiff told the Defendants that he had approximately 3.5 grams of medicinal marijuana and an appropriate medical license pursuant to California Proposition 215. (FAC at ¶ 19.) Plaintiff also told the Defendants that he had a scale that he used for monitoring his personal consumption.  (FAC at ¶ 19.) After Plaintiff disclosed his possession of the marijuana and the scale, Mr. Morelos announced that Plaintiff was under arrest. Plaintiff was then immediately taken to a holding cell at the Merced County Sheriff's Department Sub-Station in Los Banos. (FAC at ¶ 20.) Plaintiff contends that Defendants did not have a search warrant or an arrest warrant. Furthermore, Plaintiff contends that Defendants did not have probable cause or any cause at all to search Plaintiff's residence or to lawfully arrest him. (FAC at ¶ 23.)

Plaintiff was incarcerated from Friday January 18, 2013 until Wednesday, January 23, 2013. (FAC at ¶ 21.) Shortly after being released on bail, Plaintiff reported to the Department of Corrections and Rehabilitation Parole Office in Merced. (FAC at ¶ 22.)  Plaintiff requested to speak to Mr. Morelos but the officer of the day told him that Mr. Morelos was unavailable. (FAC at ¶ 22.) The officer of the day informed Plaintiff of the following: (1) Plaintiff had been discharged from parole, (2) no formal charges would be filed against him as a result of his arrest, and (3) his marijuana and scale would be returned to him. (FAC at ¶ 22.)

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Where the plaintiff fails to allege "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to allege facts sufficient to state a claim upon which relief may be granted.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see Fed. R. Civ. P. 12(b)(6).  "A claim has facial plausibility," and thus survives a motion to dismiss, "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009).  On a Rule 12(b)(6) motion to dismiss, the court

1   accepts all material facts alleged in the complaint as true and construes them in the light most

2   favorable to the plaintiff.  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005). However, the

3   court need not accept conclusory allegations, allegations contradicted by exhibits attached to the

4   complaint or matters properly subject to judicial notice, unwarranted deductions of fact or

5   unreasonable inferences.  Daniels-Hall v. National Educ. Ass'n, 629 F.3d 992, 998 (9th Cir.

6   2010).

7       Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend

8   freely when justice so requires. In addition, a district court should grant leave to amend even if no

9   request to amend the pleading was made, unless it determines that the pleading could not possibly

10  be cured by the allegation of other facts. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).  In

11  determining whether leave to amend is appropriate, the district court considers the presence of any

12  of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility. Owens v.

13  Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001).

14                          **IV. DISCUSSION**

15      Plaintiff's First Amended Complaint alleges four causes of action: (1) a claim pursuant to

16  42 U.S.C. 1983 based on a warrantless search and arrest of Plaintiff and his home in violation of

17  the Fourth Amendment; (2) a claim under the Bane Act for violations of the United States and

18  California Constitutions accomplished through intimidation, coercion, and threats; (3) a claim for

19  false arrest; and (4) a violation of Section 815.6 of the California Government Code for failure in

20  mandatory duty to report that Plaintiff was no longer on parole. The first three causes of action are

21  alleged against each of the individual defendants. The fourth cause of action is alleged only

22  against CDCR.

23      **A. First cause of action: Fourth Amendment Violation.**

24      Plaintiff's first cause of action alleges three potential bases for Defendants' violation of the

25  Fourth Amendment: (1) searching Plaintiff's residence without a warrant, (2) arresting Plaintiff

26  without a warrant or probable cause, and (3) detaining Plaintiff while law enforcement officers

27  conducted the search of his home.

28

The first inquiry in an § 1983 suit "is whether the Plaintiff has been deprived of a right secured by the Constitution and laws." Baker v. McCollan, 443 U.S. 137, 140 (1979).

1. Unlawful Search

The Fourth Amendment protects the right of the people to be secure in their "persons, houses, papers, and effects" against unreasonable searches and seizures. U.S. Const. Amend. IV; United States v. Arvizu, 534 U.S. 266, 273 (2002) (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). Search of a home or residence without a warrant is presumptively unreasonable. Payton v. New York, 445 U.S. 573, 586 (1980). A warrantless entry into a home violates the Fourth Amendment unless an exception to the Fourth Amendment warrant requirement applies, such as emergency, exigency, consent, or a reasonably conducted parole search.  Espinosa v. City and County of San Francisco, 598 F.3d 528, 533 (9th Cir. 2010). Similarly, a reasonably conducted parole search operates as an exception to the warrant requirement. Motley v. Parks, 432 F.3d 1072, 1079 (9th Cir. 2005) (citing Griffin v. Wisconsin, 483 U.S. 868, 872-75 (1987)).

Plaintiff's alleges that the defendants' entry and search were accomplished without Plaintiff's consent, a warrant or some other lawful justification. (FAC at ¶ 29.) Plaintiff contends that since he was no longer on parole and because there were no exigent circumstances present, he was entitled to the full scope of his Constitutional rights against unreasonable search and seizure. Defendants CDCR and Morelos argue that Plaintiff's Fourth Amendment rights were not necessarily violated because the officers reasonably but mistakenly relied on erroneous information. (Doc. 29 at 6 (citing Herring v. United States, 555 U.S. 135, 139 (2009).) Defendants' reliance on Herring is ill-founded; the Herring Court assumed a Fourth Amendment violation and only addressed whether exclusion of evidence yielded by the search was appropriate in the criminal context.[2]

More recently, this District has confronted a case almost on all fours with the action presently before this Court. In Torres v. County of Madera, the plaintiff alleged that his former

---

[2] Even assuming that the Supreme Court's considerations in Herring had bearing outside of a criminal evidentiary exclusion context, the stated purpose is "to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." Herring, 555 U.S. at p. 144.  This Court has seen erroneous searches of individuals discharged from parole and, depending on how regularly the parole status list was updated, this may be exactly the type of recurrent or systemic negligence to which the court referred. See Torres, 2011 WL 6141080 at *8; Willis v. Mullins, 517 F.Supp. 2d 1206, 1224 (E.D. Cal. 2007).

parole officer and members of a gang enforcement taskforce searched his residence without a warrant after he had been discharged from parole. Torres v. County of Madera, 2011 WL 6141080, *1 (E.D. Cal. 2011). The defendants in that case partially conflated the issues of whether a Fourth Amendment violation had taken place and whether a defendant was entitled to qualified immunity. See Torres, 2011 WL 6141080, *4-5 (arguing that an objectively reasonable, albeit mistaken, belief that the former parolee was on parole was sufficient to invoke the parole search exception to the Fourth Amendment.) Defendants CDCR and Morelos have made the same argument; because defendants search was based on "reasonable but mistaken reliance on erroneous information" that the plaintiff was on parole, the parole exception to the warrant requirement was satisfied. (Doc. 29 at p. 6.) The Torres court rejected that argument, finding that an objectively reasonable, albeit mistaken, belief that the subject is subject to a warrantless search is insufficient to sidestep the presumption under the Fourth Amendment that a warrantless search of the home is unreasonable. Torres, 2011 WL 6141080 at *6 (citing Motley v. Parks, 432 F.3d 1072 (addressing the level of certainty that officers must have regarding the location of a parolee's residence before conducting a search of the residence)). To trigger the warrantless search exception to the Fourth Amendment, the targeted individual must in fact be a parolee. Torres, 2011 WL 6141080 at *6 (citing Moore v. Vega, 371 F.3d 110 (2d Cir. 2004)).

Because Plaintiff alleges that he was not subject to the probation term permitting search at the time of the search, the entry violated the Fourth Amendment. See Torres, 2011 WL 6141080, *6 (finding that a parole agent's warrantless search of a former parolee's home based on an erroneous belief that he was still on parole violates the Fourth Amendment); Willis v. Mullins, 517 F.Supp.2d 1206 (E.D. Cal. 2007), aff'd sub nom. Willis v. Mora, 314 Fed.App'x. 68 (9th Cir. 2009) (same).[3]

Defendants' motions to dismiss will be denied as to this ground.

2. Unlawful Arrest

---

[3]Because search of Plaintiff's home would have been outside of the permissible scope of a search incident to lawful arrest, this Court assumes that the search was conducted, as Plaintiff alleges, as a parole search. See Riley v. California, -- U.S. ---, 134 S.Ct. 2473, 2483 (2014) (requiring a search incident to arrest to be confined to the immediate area of the arrestee and to (1) protect officer safety or (2) preserve evidence.)

Plaintiff alleges that he was arrested for a parole violation despite the fact that he was not on parole at the time of the arrest. (FAC at ¶29.) Plaintiff alleges that Defendant Morelos "announced that Plaintiff was under arrest." (FAC at ¶20.) Plaintiff was then booked for possession of marijuana and a parole violation. (FAC at ¶ 20.)

The Torres court aptly addressed this situation created when a person erroneously believed to be on parole is arrested for a parole violation:

> Defendant[]'s warrantless arrest of Plaintiff … was predicated on reasonable belief that a parole violation had occurred. See United States v. Rabb, 752 F.3d 1320, 1324 (9th Cir.1984) (a parole officer may arrest a parolee if he reasonably believes that the parolee is in violation of parole). However, just as a parole search cannot justify a warrantless search of a non-parolee and his residence, a parole violation cannot justify a warrantless arrest of a non-parolee in his residence. See Moore, 371 F.3d at 116; [United States v.] Herrera, 444 F.3d [1238,] 1247 [(9th Cir. 2006)]. Accordingly, the Court concludes that Defendant … violated the Fourth Amendment when she arrested Plaintiff … for a parole violation despite the fact that he was no longer on parole at the time of the arrest.

Torres, 2011 WL 6141080, *7. That reasoning holds true here. Arrest for a parole violation of an arrestee who is not on parole could give rise to a claim for unlawful seizure in violation of the Fourth Amendment.

However, Plaintiff was also found in possession of 3.5 grams of marijuana. (FAC at ¶19.) In the criminal context, the fruit of the poisonous tree doctrine, also known as the exclusionary rule, generally operates to exclude evidence obtained in violation of the Fourth Amendment. See Wong Sun v. United States, 371 U.S. 471, 488 (1963). In the Section 1983 context, district courts in the Ninth Circuit – including this Court – have uniformly held that the exclusionary rule does not apply. Fowler v. California Highway Patrol, 2014 WL 1665046, *10 (N.D. 2014) (citing, *inter alia*, Smith v. Kelly, 2013 WL 5770337, *9-14 (W.D. Wash. 2013) (collecting cases rejecting the application of the exclusionary rule in the Section 1983 context)); Willis v. Mullins, 2014 WL 1643578, *3 (E.D. Cal. 2014). Accordingly, evidence obtained in violation of the Fourth Amendment is not excluded from consideration in a Section 1983 action when determining whether the officer had probable cause for an arrest. As a result, despite fact that the initial search of Plaintiff and his residence were in violation of the Fourth Amendment, any evidence of the

commission of a crime obtained as a result of those unlawful searches would operate as probable cause for an arrest.

Plaintiff possessed marijuana and a scale for measuring it. (FAC at ¶19.) Regardless of whether or not Plaintiff "possessed an appropriate medical license pursuant to California Proposition 215," (FAC at ¶19) possession of marijuana is still a criminal offense in California. See Cal.Pen.Code § 11357.[4] Proposition 215 does not alter the standard for probable cause for arrest; "it simply provides those arrested for possession of marijuana a defense in court, if they can prove they used marijuana with a doctor's approval." Ross v. RagaingWire Telecommunications, Inc., 42 Cal.4[th] 920, 929 (2008); see Stewart v. Morris, 2013 WL 5268977, *8 (N.D. Cal. 2013) (citing City of Clarmont v. Kruse, 177 Cal.App.4th 1153, 1171 (2009)) (Proposition 215 "provides only an affirmative defense to prosecution.") Defendants had probable cause to take Plaintiff into custody, despite the illegality of their search of his home. Defendants' motions to dismiss will be granted as to this ground for relief.

Plaintiff's complaint has alleged facts that support a finding of probable cause to arrest. Allowing amendment as to this cause of action would be futile. Plaintiff will not be granted leave to amend as to this ground.

### 3. Unlawful Detention

Plaintiff alleges that after "[d]efendants informed plaintiff that they were there to conduct a parole search," "[t]hey placed Plaintiff in handcuffs." (FAC at ¶19.) When Defendants announced that they were performing a parole search Plaintiff was seized within the meaning of the Fourth Amendment. See Michigan v. Chesternut, 486 U.S. 567, 573 (1988) (holding that a person has been seized when, in view of all of the circumstances, a reasonable person would have believed that he was not free to leave); Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968) ("Only when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." (citations omitted)).  At that point, Defendants were unaware that Plaintiff possessed marijuana, therefore did not have probable cause to arrest,

---

[4] Possession of fewer than 28.5 grams of marijuana is an infraction in California and was so at the time of Plaintiff's arrest. See Cal.Pen.Code § 11357(b). Even where a person has only committed a very minor crime, not punishable by any time in custody, in an officer's presence, the officer may – without violating the Fourth Amendment – arrest the offender.

and had no lawful authority to conduct a parole search. Although officers may detain in individual – including using handcuffs – to allow completion of a lawful search (see Muehler v. Mena, 544 U.S. 93, 99 (2005); Michigan v. Summers, 452 U.S. 692 (1981); Sanchez v. Canales, 574 F.3d 1169 (9th Cir. 2009)), Defendants' mistaken belief that Plaintiff was on parole did not operate as an exception to the warrant requirement. Accordingly, defendant was detained without lawful authority.

However, shortly after the detention began Plaintiff was subject to arrest for possession of marijuana as discussed.  The bulk of the detention that took place is alleged to have taken place "[a]fter Plaintiff disclosed his possession of marijuana and the scale," (FAC at ¶ 20) and Defendants placed Plaintiff under lawful arrest. As a result, the causal chain between the invalid parole search and Plaintiff' detention was broken when Plaintiff was placed under lawful arrest.

In summary, Plaintiff's Fourth Amendment right to be free of unreasonable seizure was violated when Defendants detained Plaintiff pursuant to the search of Plaintiff's residence because they did not have probable cause to place Plaintiff under lawful arrest. However, at the point when Defendants obtained probable cause to believe that Plaintiff was in possession of marijuana, the detention ceased to be unlawful. Plaintiff's cause of action on this ground will be dismissed in part; once probable cause to arrest was established no further unlawful detention took place.

Defendants' motions to dismiss will be granted in part and denied in part as to this ground for relief. As to the dismissed portion – detention after lawful arrest – allowing amendment would be futile. Plaintiff will not be granted leave to amend as to this ground.

4. Section 1983 Individual Capacity Liability

All of the Defendants contend that Plaintiff's complaint fails to plead adequate factual matter to determine each defendant's alleged role in the search, detention, and arrest. (See Doc. 24 at p. 3; Doc. 26 at p. 9; Doc 29. at p. 6; Doc. 30 at p. 10.) Defendants are all correct that in order to state a claim for a civil rights violation under 42 U.S.C. Section 1983, a plaintiff must allege that a particular defendant, acting under color of state law, deprived plaintiff of a right guaranteed under the United States Constitution or a federal statute. 42 U.S.C. § 1983; see West v. Atkins, 487 U.S. 42, 48 (1988). Suits against government officials under Section 1983 in their individual capacities

"seek to impose personal liability upon a government official for actions he takes under color of state law." Kentucky v. Graham, 473 U.S. 159, 165 (1985). "A person deprives another of a constitutional right, within the meaning of Section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir.1978).

Section 1983 liability cannot attach without a showing of a defendant's "personal participation in the alleged rights deprivation." Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002); see Chuman v. Wright, 76 F.3d 292, 294 (1996) (Liability cannot attach to a "mere bystander" who had "no role in the unlawful conduct.") Individual agents are only subject to Section 1983 liability for group participation if they perform functions "integral" to an unlawful search or detention, even if their individual actions do not themselves rise to the level of a constitutional violation. Bravo v. City of Santa Maria 665 F.1076, 1089-1090 (9th Cir. 2011) (citing, *inter alia*, Boyd v. Benton County., 374 F.3d 773, 780 (9th Cir.2004)). "Integral participation requires some *fundamental involvement* in the conduct that allegedly caused the violation." Boarman v. County of Sacramento, --- F.Supp.3d ----, 2014 WL 5363765, *11 (E.D. Cal. 2014) (quoting Monteilh v. County of Los Angeles, 820 F.Supp.2d 1081, 1089 (C.D. Cal. 2011) (emphasis in original)).

However, courts have been careful to temper the requirements placed on plaintiffs alleging violations of the Fourth Amendment to ensure that law enforcement not be permitted to "hide behind a shield of anonymity and force plaintiffs to produce evidence that they cannot possibly acquire." See Dubner v. City and County of San Francisco, 266 F.3d 959, 965 (9th Cir. 2001); see also Rauen v. City of Miami, 2007 WL 686609, *4 (S.D. Fla. 2007) (finding dismissal improper based on plaintiffs' failure to identify the officers because "it would reward [the officers] for their uniform method of dress ..., which makes it virtually impossible for an observer to identify the officers or departments behind each face shield"). In Dubner the court noted that the plaintiff "did everything she possibly could to identify the arresting officers. She obtained a copy of the arrest report and, assuming the officers listed were in fact the arresting officers, named them in her

1   suit...." Dubner, 266 F.3d at 965. In this case, Plaintiff came to identify the named Defendants

2   using a "Task Force Case Report" generated by "Merced County Multi-Agency Task Force" (Doc.

3   27-2 at ¶ 4-5) but the only individual conduct alleged by any of the Defendants is attributed to

4   Defendant Morelos (FAC at ¶ 20.) Defendant Morelos is alleged to have affected the arrest after

5   determination of probable cause for arrest. (Id. at ¶ 20; see id. at ¶ 29.) However, prior to

6   establishment of probable cause, the presence of the Defendants in executing the unlawful search

7   – insofar as they were present – that caused Plaintiff to be seized within the meaning of the Fourth

8   Amendment.[5] Plaintiff has alleged a constitutional violation for unlawful detention – however

9   brief – against those officers involved in the search.

10          More complicated is Plaintiff's claim against the other named defendants based on their

11   involvement in the unlawful search. This Court is hesitant to find that Plaintiff has failed to state a

12   claim as to his unlawful search ground after having alleged a constitutional violation and having

13   alleged all of the actors present and potentially involved in the search at issue. Such a finding by

14   this Court would allow law enforcement to hide a shield of anonymity and force plaintiff to plead

15   unknowable information within that is exclusively within the grasp of the Defendants. (See

16   Dubner, 266 F.3d at 965; see also Doc. 10 (detailing the difficulty that Plaintiff's counsel

17   encountered in obtaining any records recording the search from the involved agencies).)

18          Defendant Jenkins has noted that Plaintiff's allegations rest on a "[you] know[] what [you]

19   did" type theory. Defendant Jenkins is correct. However, Defendants – as members of the search

20   team – are in the best position to know who was responsible for the search. This Court has

21   previously recognized that dismissal is inappropriate where a plaintiff alleging an unlawful search

22   is led by a defendant from the area being searched such that the plaintiff cannot know which of the

23   named defendants was actually responsible for a search. Young v. City of Visalia, 687 F.Supp.2d

24   1141, 1153-1154 (E.D. Cal. 2009) (citing, inter alia, Jones v. Williams, 297 F.3d 930, 935 (9th

25   Cir. 2002) (noting that a jury instruction on group liability may be appropriate where officers

26   deprive the victim of the chance to learn exactly which officers took what actions in a search)).

27

28   ―――――――――――――――
    [5] That Plaintiff was placed in handcuffs certainly indicates that he was detained but responsibility for the detention
    falls upon all of the officers involved in the search, not just the officer who placed Plaintiff in handcuffs. Therefore,
    Plaintiff's failure to allege who placed him in handcuffs is not fatal to his claim.

Plaintiff cannot know who conducted the search of his home because before the named defendants searched plaintiff's house Defendant Morelos placed "Plaintiff … under arrest" then "immediately [took him] to a holding station at the Merced County Sheriff's Department … in Los Banos." (FAC at ¶ 20.)

In the same vein, the Defendants' claims that Plaintiff failed to plead that the individual officers engaged in any active conduct are not well taken. Plaintiff alleges that the seven named defendants were all members of the Gang Taskforce, the CDCR, or CHP, all of whom were organized to conduct parole searches. The Court does not place much stock in the suggestion that any of those defendants – all of whom were members of the taskforce that was tasked with conducting the search – were mere bystanders with no role in the search. Defendants have proffered no explanation as to what each might have been doing other than taking an active role in the search. Especially in light of Officer Morelos having taken Plaintiff into custody before the search such that Plaintiff could not observe the search, Defendants' reliance on Plaintiff's inability to plead the specific conduct by each officer involved in the search is unpersuasive. The Court finds it plausible that the seven defendants, who are alleged to be members of the seven-officer taskforce that Plaintiff alleges to have searched Plaintiff's home, were actively involved in that search.[6] Defendants' motion to dismiss the unlawful search and detention (prior to establishment of probable cause to arrest) claims will be denied on that ground.

5. Qualified Immunity

Defendants Flores and French move to dismiss on the ground that they are entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages 'unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" Wood v. Moss, --- U.S. ----, 134 S.Ct. 2056, 2066–67 (2014) (quoting Ashcroft v. al–Kidd, --- U.S. ----, 131 S.Ct. 2074, 2080 (2011)). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly

---

[6] Any evidence that any of the individual defendants were not involved in the search in question may be presented in a motion for summary judgment.

and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Pearson v. Callahan, 555 U.S. 223, 231 (2009) "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Qualified immunity affords officers "ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Liberal v. Estrada, 632 F.3d 1064, 1077 (9th Cir.2011) (quoting Rodis v. City of San Francisco, 558 F.3d 964, 970–71 (9th Cir.2009)).

"Because qualified immunity is an affirmative defense from suit, not merely from liability, '[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" Doe By and Through Doe v. Petaluma City School Dist., 54 F.3d 1447, 1449–50 (9th Cir.1995) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).

As discussed, *supra*, Plaintiff has alleged a Fourth Amendment violation based on the unlawful search of his home by the named defendants. Accordingly, this Court need only determine whether the right in question was clearly established at the time of the challenged conduct.

The "dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Friedman v. Boucher, 580 F.3d 847, 858 (9th Cir. 2009) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001). Under the applicable pleading standard, the plaintiff must allege facts sufficient to make out a plausible claim that it would have been clear to the defendant officer that his conduct was unlawful in the situation he confronted. Wood, 134 S.Ct. at 2067.

The Supreme Court noted in Saucier v. Katz, the inquiry into whether the right was clearly established "must be undertaken the light of the specific context of the case…." Saucier, 533 U.S. at 201. In this case, the Defendants erroneously believed that their search was in compliance with an exception to the warrant requirement; they believed that Plaintiff was on parole. There is no question that the search of a residence without a warrant is presumptively invalid.  Payton, 445

U.S. at 586. However, if reasonable officers in Defendants' position could have held a reasonable but mistaken belief that their conduct did not violate a clearly established right then they are entitled to immunity. At this phase of the litigation, the Court has no information before it to determine whether Defendants' mistake in determining whether Plaintiff was on parole was reasonable or even who made that mistake. Presently the Court cannot know which officer, if any, checked Plaintiff's parole status, when that officer did so, or against which database the officer performed the check. This Court does not discount that officers often receive information from other sources that they must rely upon and which may entitle them to immunity but this Court cannot make a determination about the reasonableness of that reliance from an empty record. See Harker v. Zigler, 2014 WL 1270732 at *4 (E.D. Cal. 2014) (refraining from making a qualified immunity finding prior to discovery where entitlement to immunity was not clear from the face of the complaint); Torres, 2011 WL 6141080 at *9-10 (evaluating the reasonableness of the officer's reliance on each source before finding qualified immunity); see also, Motley v. Parks, 432 F.3d at 1082 (holding that reliance on another officer's representation of parole status and last known address on the date of the search was objectively reasonable). But cf. Willis v. Mullins, 2014 WL 1154090 at *2, 4 (E.D. Cal. 2014) (submitting to a jury the question of reasonableness of reliance on a Parole Roster that was known to be out of date before the search was conducted). Accordingly, the Court cannot determine that Defendants are entitled to qualified immunity.[7]

### B. Second Cause of Action: Violation of the Bane Act

California Civil Code Section 52.1, also known as the Tom Bane Civil Rights Act ("Bane Act"), provides to any individual a private right of action "for damages" against any "person or persons" who "interferes by threat, intimidation, or coercion … with the exercise or enjoyment … of rights secured by" the Constitutions or laws of the United States or California. Cal. Civ. Code § 52.1. The Bane Act was "adopted 'to stem a tide of hate crimes'" but its reach is not "limited to such crimes [and does not] require plaintiffs to demonstrate … a discriminatory purpose," i.e., that the defendant committed a hate crime. Venegas v. County of Los Angeles, 32 Cal.4th 820, 843 (2004).

---

[7] Although Plaintiff references in his moving papers the Gang Taskforce Report, apparently authored by Defendant Villegas, the content of that report is not the appropriate subject of judicial notice. See Doc. 40-1.

Defendants Morelos, Kensey, Villegas, and Jenkins have moved to dismiss this claim on the basis that (1) Plaintiff has failed to plead underlying Constitutional violations to support a claim under Section 52.1. Defendants Morelos, French, and Flores have moved to dismiss on the ground that (2) Plaintiff failed to allege facts concerning each Defendant's conduct that amounted to threats, intimidation, or coercion within the meaning of the Bane Act.[8] Defendants Jenkins, Kensey, and Villegas seek dismissal, claiming that (3) Plaintiff failed to allege compliance with the California Government Claims Act.

### 1. Underlying Constitutional Violations

Defendant Morelos, Kensey, Villegas, and Jenkins contend that Plaintiff failed to adequately plead the underlying constitutional violations necessary for a Bane Act claim. Because this court has already found that Plaintiff has stated a Fourth Amendment claim regarding the unlawful search and a brief period of detention, *supra*, it will not address the issue again.

Defendants claim that Plaintiff's Bane Act Claim, to the extent that it is based on violations of California Constitutional protections, should be dismissed because neither Section 7 nor Section 13 of the "California Constitution have been recognized to afford an action for damages." (Doc. 24 at p. 6; see Doc. 29 at p. 8.) As support for that proposition, Defendants Jenkins and Morelos rely on Katzberg v. Regents of University of California, 29 Cal.4th 300 (2002) (holding that an action for damages was not available to redress a freestanding claim pursuant to Article I, Section 7 of the California Constitution; the Bane Act was not discussed); Lopez v. Youngblood, 609 F.Supp.2d 1125 (E.D. Cal. 2009) (rejecting independent causes of action for violation of Article I, Sections 7 and 13 of the California Constitution but allowing a Bane Act claim based, in part, on violation of the same sections). Defendant Jenkins either misinterprets or purposely misrepresents those cases. Neither case states, as Defendant Jenkins contends, that a plaintiff "may not seek damages by way of Civil Code ection 52.1 for violation of" Section 7 or Section 13. (Doc. 24 at 6.) Rather, those cases – and more recent cases on the issue – have recognized that in the same way that a Fourth Amendment violation cannot be brought as a freestanding cause of action and must be brought through a Section 1983 claim,

---

[8] Defendants Flores and French also move to dismiss this claim because Plaintiff did not plead facts that would indicate threats, intimidation, or coercion, under the meaning of the Bane Act.

1  Sections 7 and 13 are not appropriately brought as freestanding causes of action but can be

2  brought through a Bane Act claim. Stroman v. Davis, 2014 WL 3867473 at *3 (E.D. Cal. 2014)

3  ("Although California does not recognize a private right of action under [S]ections 7(a) or 17, it

4  permits plaintiffs to sue for violations of these provisions under [S]ection 52.1 of the California

5  Civil Code, which is 'the California state law analog to [S]ection 1983.'" (quoting Johnson v. Bay

6  Area Rapid Transit Dist., 724 F.3d 1159, 1167 (9th Cir.2013)); see Johnson v. Shasta County, ---

7  F.Supp.3d ----, 2015 WL 75245, *14 (E.D. Cal. 2015) (recognizing a claim for damages under the

8  Bane Act based on a violation of Article I, Section 13 of the California Constitution).

9      Defendants' challenges to the underlying constitutional violations fail.

10     2. Pleading Threats, Intimidation, or Coercion under the Bane Act

11     Whether there was a violation of a right and whether that violation was accomplished by

12  threat, intimidation or coercion are separate analytical inquiries. City & County of San Francisco

13  v. Ballard, 136 Cal.App.4th 381, 408 (2006).

14     The threat, intimidation, or coercion inquiry does not require allegations of violence or

15  threats of violence. Cole v. Doe 1 thru 2 Officers of the City of Emeryville Police Dep't, 387

16  F.Supp.2d 1084, 1103 (N.D.Cal. 2005). Instead, a plaintiff need only allege "an attempted or

17  completed act of interference with a legal right, accompanied by a form of coercion." Ballard, 136

18  Cal.4th at 408.

19     The California Second District Court of Appeal held in Shoyoye v. County of Los

20  Angeles, 203 Cal.App.4th 947, 959 (2012), that "where coercion is inherent in the constitutional

21  violation alleged ... the statutory requirement of 'threats, intimidation, or coercion' is not met

22  [without an additional showing]. The statute requires a showing of coercion independent from the

23  coercion inherent in the wrongful detention itself." This Court has recently had occasion to explain

24  that California Appellate Courts and Federal District Courts in California sought to limit scope of

25  the Shoyoye holding to cases where the underlying rights-violation is intentional:

26         Most [courts that have addressed the issue] have distinguished Shoyoye on
        the basis that conduct which is intentional or egregious does not implicate Shoyoye
27      at all. See, e.g., Jones v. Penhollow, 2014 WL 347033, at *11 (Cal.Ct.App. Jan.31,
        2014). In Jones, a state appellate court distinguished Shoyoye in a case where
28      officers attacked a prisoner in his cell. The court held that the conduct "went

beyond the unintentional or incidental coercion in <u>Shoyoye</u>, and it is not necessarily conduct inherent in all violations of the right to protection from restraint or harm." Id. (emphasis added). The court went on to say "<u>Shoyoye</u> does not compel us to conclude that when, as here, 'deliberate or spiteful' force accomplishes a knowing violation of the right to protection from bodily harm, the Bane Act requires an additional showing of conduct violating some other separate right." Id.

Several federal cases have reached the same or a similar conclusion in interpreting <u>Shoyoye's</u> effect on actions under the Bane Act. Courts in the Northern District have held on a number of occasions that the relevant distinction is not whether there was an act or threat separate from the constitutional violation claimed but whether the conduct giving rise to the claim was intentional. See <u>Holland v. City of San Francisco</u>, 2013 WL 968295, at *10 (N.D.Cal. Mar.12, 2013) (holding that the harms alleged were brought about by intentional conduct, in contrast to the negligent overdetention in <u>Shoyoye</u> and therefore may reasonably [be] perceived as threatening, intimidating, or coercive); <u>M.H. v. County of Alameda</u>, 2013 WL 1701591, at *7 (N.D.Cal. Apr.18, 2013) (holding that the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and ... <u>Shoyoye</u> applies only when the conduct is unintentional). The Northern District does not stand alone in this interpretation. In the Eastern District this interpretation of <u>Shoyoye</u> has been adopted as well. See <u>Dillman v. Tuolumne County.</u>, 2013 WL 1907379, at *21 (E.D.Cal. May 7, 2013) (holding that where Fourth Amendment unreasonable seizure or excessive force claims are raised and intentional conduct is at issue, there is no need for a plaintiff to allege a showing of coercion independent from the coercion inherent in the seizure or use of force).

<u>Olvera v. City of Modesto</u>, 2015 WL 627082 at *3 (E.D. Cal. 2015)

Even applying the limitation that <u>Shoyoye</u> should only be applied to cases where the underlying violation is "deliberate or spiteful" (<u>Jones</u>, 2014 WL 347033 at *11) or "intentional" rather than "negligent" (<u>Dillman</u>, 2013 WL 1907379 at *21), reading Plaintiff's complaint in his favor, no inference that Defendants intentionally, deliberately, or spitefully violated Plaintiff's Fourth Amendment rights can be drawn. Rather, allegations of the complaint support an inference that the Defendants were unaware that Plaintiff was not on parole (see FAC at ¶ 19 ("Defendants informed Plaintiff that they were there to conduct a parole search."), that Plaintiff did not tell Defendants that he had been discharged from parole, and that Plaintiff was discharged from custody when it became clear that he was not on parole at the time of the search (see FAC at ¶ 22). Accordingly, although the complaint alleges a Fourth Amendment violation, "the constitutional violation at question [appears to have been] 'brought about solely by human error rather than intentional conduct.'" <u>Bass v. City of Freemont</u>, 2013 WL 891090 at *6 (N.D. Cal. 2013) (quoting <u>Shoyoye</u>, 203 Cal.App.4th at 959.)

16

Because Plaintiff has not alleged that Defendants intentionally, deliberately, or spitefully committed the underlying alleged violation of the California and United States Constitutions, Plaintiff is required to plead that Defendants used threats, intimidation, or coercion beyond that inherent in the underlying violations. Compare Ashley v. City and County of San Francisco, 2014 Wl 4627736 at *11 (N.D. Cal. 2014) (finding that an officer acts intentionally – such that the plaintiff need not show threats, intimidation, or coercion outside of the coercion inherent in the underlying seizure – by booking a person into custody under the wrong name in an attempt to prolong his wrongful detention); with Shoyoye, 203 Cal.App.4th at 959 (holding that the coercion inherent in incarceration was inadequate to show threats, intimidation, or coercion to state a claim under the Bane Act where the underlying Fourth Amendment violation was caused by an unintentional computer error by jail personnel).

In support of his Bane Act claim, Plaintiff has not alleged that Defendants used any force beyond that necessary to affect the search. In fact, Plaintiff has alleged that "Defendants obtained Plaintiff's compliance" with the search and detention (and the arrest) "by physically restraining him and by intimidation and implicit threats of the use of additional physical force as required." (FAC at ¶ 33.) Placing an arrestee in handcuffs, transporting him, and detaining him in the jail are all acts that are inherent in the violations alleged.

Plaintiff's failure to allege facts that support that Defendants either (1) intentionally violated his rights or (2) used force beyond that necessary to commit the alleged unlawful search, is fatal to his Bane Act claim. Plaintiff's Bane Act claim will be dismissed on this ground. This Court cannot determine that allowing amendment would be futile as to this claim; Plaintiff will be granted leave to amend as to this claim to cure the identified deficiencies.

### 3. California Government Claims Act

Defendants Jenkins, Kensey, and Villegas seek dismissal based on Plaintiff's failure to allege compliance with the California Government Claims Act.

As a preliminary matter, Plaintiff alleges that the Merced County Multi-Agency Task Force ("MMGTF") orchestrated the parole compliance searches that led to the erroneous search of his residence. MMGTF is alleged to be a joint-effort taskforce composed of officers from the

California Department of Highway Patrol ("CDHP"), California Department of Corrections and Rehabilitation ("CDCR"), Merced County Sheriff's Department, the Merced County Probation Department, and police departments from Merced, Atwater, Livingston, and Los Banos.

The California Government Claims Act, which is also known as the California Tort Claims Act, Cal. Gov't Code §§ 900 et seq. ("CGCA") requires, as a condition precedent to suit for damages against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part. See Mangold v. California Pub. Utilities Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995) (citing Snipes v. City of Bakersfield, 145 Cal.App.3d 861 (1983)). "Public Entities" include counties, public agencies, and any other public entity or a public employee or any other political subdivision or public corporation of the State. Cal. Gov't Code § 811.2. Timely presentation of claims is not merely a procedural requirement but is an element of the plaintiffs cause of action. Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209 (2007). Accordingly, under California law, failure to allege facts either demonstrating or excusing compliance with the CGCA subjects a complaint to dismissal for failure to state a claim. See California v. Superior Ct. (Bodde), 32 Cal.4th 1234, 1245 (2004).

Relatedly, California Government Code § 950.2 mandates that "a cause of action against a public employee ... for injury resulting from an act or omission in the scope of his employment as a public employee is barred unless a timely claim has been filed against the employing public entity." Fowler v. Howell, 42 Cal.App.4th 1746, 1750 (1996). The California Legislature "included in the [Government] Claims Act what amounts to a requirement that ... one who sues a public employee on the basis of acts or omissions in the scope of the defendant's employment [must] have filed a claim against the public-entity employer pursuant to the procedure for claims against public entities." Briggs v. Lawrence, 230 Cal.App.3d 605, 612–13, (1991) (citing Cal.Gov.Code §§ 911.2, 945.4, 950.2, 950.6(a)). In federal court, the failure to allege compliance with the Government Claims statutes with respect to a public employee will subject state law claims to dismissal. Karim Pan ahi v. Los Angeles Police Department, 839 F.2d 621, 627 (9th Cir.1988).

Therefore, in order to state a claim for any state law tort cause of action Plaintiff must plead facts showing compliance with the presentment requirements California Government Claims Act.  Plaintiff has alleged that he "has met all of the requirements of California's Government Claims Act. The Victim Compensation & Government Claims Board denied Plaintiff's claim on August 15, 2013 … The County of Merced denied Plaintiff's claim on July 12, 2013…." (FAC at ¶ 16.) Plaintiff also submitted the rejection letters for the claims submitted to both agencies. (Doc. 27-1.) Further, Defendants Villegas and Kensey appear to have abandoned this argument in their reply. For all those reasons, Defendants' Villegas and Kensey's motion to dismiss based on a failure to comply with the Government Claims Act will be denied.

However, Defendant Jenkins has correctly noted that Plaintiff did not submit a claim to any of the police departments that Plaintiff alleges to have been a part of the taskforce. Although Plaintiff contends that he has substantially complied with the Government Claims Act, misdirected claims that are not presented in compliance with Government Code Section 915 – requiring claims to be delivered to the clerk, secretary, or auditory of the particular public entity – are only deemed to have substantially complied if they are actually received by the entity. Judicial Council of California v. Superior Court, 229 Cal.App.4th 1083, 1100-1101 (2014); see also Life v. County of Los Angeles, 227 Cal.App.3d 894, 901 (1991) (holding that the Government Claims Act barred suit even where a public employee failed to forward a misdirected claim to the appropriate agency). Plaintiff has only alleged compliance with the Government Claims Act as to the State of California and County of Merced Defendants. Plaintiff cannot maintain any state causes of action against any other public entity or public employee defendants.[9] The Bane Act and false arrest causes of action will be dismissed against all non-State and non-County of Merced employees and entities on this ground. Plaintiff will be given leave to amend to allege compliance with the Government Claims Act as to the dismissed defendants.

///

///

---

[9] Based on the operative complaint, it is unclear to this Court which defendants worked for each of the discussed entities. It also appears that – to the extent that any of the named defendants worked for entities other than the MMGTF – Plaintiff alleges that they were under the control of MMGTF, a subsidiary of the County of Merced.

**C. Third Cause of Action: False Arrest**

Defendants Flores and French have moved to dismiss Plaintiff's California false arrest claim on the grounds that they are entitled to statutory immunity under California Government Code Section 820.4 and California Penal Code Section 847(b)(1). (Doc. 30 at p. 8.)

Defendants' motion represents to this Court that Section 820.4 provides that "[a] public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law." (Doc. 30 at p. 8.) Defendants omit the next sentence of that two-sentence section: "Nothing in this section exonerates a public employee from liability for false arrest or false imprisonment." Cal. Gov. Code § 820.4; see Asgari v. City of Los Angeles, 15 Cal.4th 744, 754 (1997) (characterizing Section 820.4 as *imposing* liability for false arrest).[10] Defendants' complete misrepresentation of the law is astounding to the Court.[11] Defendants' motion to dismiss on this ground will be denied.

California Penal Code Section 847(b)(1) provides that a law enforcement officer acting within the scope of his or her authority is immunity from civil suit for false arrest "where the arrest was lawful, or the peace officer, at the time of the arrest, had reasonable cause to believe the arrest was lawful." The Court has determined, as described in Section IV(A)(2), *supra*, that Defendant Morelos' arrest of Plaintiff was lawful. He – and to the extent that any of the other officers could be implicated in his arrest of Plaintiff – is entitled to immunity.

Defendants' motion to dismiss on this ground will be granted.[12] Because Plaintiff's arrest was lawful and Defendants are entitled to immunity on this claim, amendment would be futile; Plaintiff will not be granted leave to amend this claim.

**D. Fourth Cause of Action – Violation of California Government Code Section 815.6**

California Government Code Section 815.6 allows liability against a public entity for failure to discharge a mandatory duty:

---

[10] Although Section 820.4 does not expressly impose liability for false arrest, it makes clear that public employee statutory immunity – which operates as an exception to the general rule of liability attaching to the entity for conduct by its employee within the scope of his or her employment (Cal. Govt. Code § 815.2(a)) – does not apply to false arrest or false imprisonment claims.

[11] In Defendants' reply, Counsel also misrepresents that "Plaintiff fail[ed] to mention [Section 847] in his opposition." That is plainly not the case. (Doc. 41 at p. 6.) Counsel would do well to review Rule 11 of the Federal Rules of Civil Procedure before submitting anything further to this Court.

[12] Plaintiff has only alleged facts to indicate that Defendant Morelos was responsible for the arrest. Accordingly, even if Plaintiff had stated a claim he would only have done so against Defendant Morelos. Plaintiff's false arrest claim would have been dismissed against the other defendants on that ground.

> Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

A Section 815.6 claim has three elements: (1) an enactment poses a mandatory, not discretionary, duty which was violated, (2) the enactment was intended to protect against the type of harm suffered, and (3) the breach of the duty imposed by the enactment was a proximate cause of the injury suffered. Mayfield v. County of Merced, 2014 WL 2574791, at *7 (E.D. Cal. 2014); Phillips v. County of Fresno, 2013 WL 6243278, at *19 (E.D. Cal. 2013) (citing Janis v. California State Lottery Com., 68 Cal.App.4th 824 (1998)).

Plaintiff's cause of action for violation of mandatory duty alleges that California Penal Code Section 3003(e), and CDCR Operations Manual Sections 13030.10, 13030.13, 13030.13.1, and 13030.33[13] impose a mandatory duty on the CDCR to provide accurate parole information to local law enforcement agencies regarding inmates paroled in their jurisdiction. Penal Code Section 3003(e) provides, among other things, that a parolee's "date of parole and discharge," if available, "shall be released by the [CDCR] to local law enforcement agencies." Cal.Pen.Code § 3003(e).[14] Section 13030.10 of the CDCR Operations Manual provides that "[e]very [CDCR] employee who collects, maintains, or receives personal information shall make reasonable efforts to ensure that the information is accurate, timely, relevant, and complete." CDCR Operations Manual §13030.10. Section 13030.13.1 provides that the CDCR "shall correct, update, withhold, or delete any portion of a record that [it] knows, or has reason to believe, is inaccurate before transmitting the information to an agency outside of the state government." CDCR Operations Manual § 13030.13.1.

---

[13] Section 13030.33 allows for suit to be filed against the CDCR for damages in three limited situations: CDCR (1) refuses to comply with a lawful request to inspect records, (2) fails to maintain any record with accuracy, timeliness or completeness where that failure results in a determination adverse to that individual, or (3) fails to comply with the Information Protection Act in a way that adversely effects the plaintiff. CDCR Operations Manual Section 13030.33. Plaintiff has not indicated which of those categories he believes that he falls into.

[14] Subsections (k) and (l) of Section 3003 both make clear that CDCR is responsible for keeping the Law Enforcement Automated Data System (LEADS) and California Law Enforcement Telecommunications System (CLETS) updated to "ensure the availability of accurate information regarding inmates released from state prison." Subsection (k) specifically considers that "termination of postrelease supervision" is the type of information that the CDCR would be required to provide to local law enforcement. Cal.Pen.Code § 3003(k).

Defendant CDCR contends that Plaintiff has failed to establish a mandatory duty on the part of CDCR. The Court disagrees. Whether the enactment imposes a "mandatory duty" is a question of statutory interpretation. <u>Guzman v. County of Monterey</u>, 46 Cal.4th 887, 898 (2009). "To construe a statute as imposing a mandatory duty on a public entity, the mandatory nature of the duty must be phrased in explicit and forceful language." <u>Guzman</u>, 46 Cal.4th at 898–899. As the Supreme Court recently noted, a statute's

> use of the word 'shall,' 'generally means must. Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 432, n. 9 (1995); see also, e.g., Federal Express Corp. v. Holowecki, 552 U.S. 389, 400 (2008) ("Congress' use of the term 'shall' indicates an intent to 'impose discretionless obligations' "); A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 114 (2012) ("[W]hen the word shall can reasonably read as mandatory, it ought to be so read").

<u>Dep't of Homeland Sec. v. MacLean</u>, -- U.S. ---, 135 S. Ct. 913, 924 (2015) (some internal quotation marks and citations omitted). Penal Code Section 3003(e), and Sections 13030.10 and 13030.13.1 of the CDCR Operations Manual all use the word shall to require the CDCR to provide information and ensure that it is accurate and timely, respectively. The duties imposed by those sections are mandatory, not discretionary.

The text Penal Code Section 3003 indicates that the legislature was concerned with keeping local law enforcement updated on information of parolees released into their jurisdictions which "shall be continually available to local law enforcement agencies upon request." Cal.Pen.Code § 3003(e)(4).[15] That information is to include "accurate information regarding inmates released from state prison," including "the termination of postrelease supervision." Cal.Pen.Code § 3003(k). It appears that Section 3003 is designed, in part, to avoid the exact harm that may have taken place here; law enforcement potentially having receiving inaccurate information regarding parole status.

Without an established record before this Court it cannot determine what, if any, role CDCR played in the named Defendants' decision to conduct the erroneous parole search. Plaintiff's inability to know whether the named Defendants failed to determine whether Plaintiff

---

[15] The Court's own review of the legislative history of Section 3003 has not yielded any additional insight into the legislature's purpose in requiring the CDCR to provide parole information to local law enforcement.

was on parole or whether CDCR provided inaccurate information does not impact his claims. Such information should be kept by the CDCR and should be easily discovered. See CDCR Operations Manual § 13030.15 ("Each operational unit within CDC[R] … shall keep an accurate accounting of the date, nature and purpose of each disclosure …to persons or government entities … perform[ing] their constitutional or statutory duties … [or] [t]o a law enforcement … entity when required for … licensing, certification, or regulatory purposes….")

Defendant CDCR's motion to dismiss this cause of action will be denied.

## V. ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendants' motions to dismiss the first cause of action – violation of the Fourth Amendment are GRANTED in part and DENIED in part;

   a. Defendants' motions to dismiss the unlawful search claim are DENIED as to all defendants;

   b. Defendants' motions to dismiss the unlawful arrest claim are GRANTED as to all defendants;

      i. Plaintiff is not granted leave to amend this claim;

   c. Defendants' motions to dismiss the unlawful detention claim is GRANTED as to all conduct that took place after probable cause was established for Plaintiff's lawful arrest, as to all defendants;

      i. Plaintiff is not granted leave to amend this claim;

   d. Defendants' motion to dismiss the unlawful detention claim is DENIED as to Plaintiff's detention before Defendants obtained probable cause to arrest Plaintiff, as to all defendants;

2. Defendants' motions to dismiss the second cause of action – violation of the Bane Act are GRANTED, as to all defendants;

   a. Plaintiff is granted leave to amend this claim as specified herein. Any amended complaint must be filed within thirty (30) days of the issuance of this order;

3.   Defendants French and Flores' motion to dismiss the third cause of action – false arrest is

GRANTED as to all defendants;

a.   Plaintiff is not granted leave to amend this claim;

4.   Defendant CDCR's motion to dismiss the fourth cause of action – breach of mandatory

duty is DENIED.

IT IS SO ORDERED.

Dated:   March 4, 2015

_____

SENIOR  DISTRICT  JUDGE